**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BEVERLY T. SCHULTZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3238** |
| **MICHAEL J. ASTRUE, COMMISSIONER**<br>**SOCIAL SECURITY ADMINISTRATION** | **SECTION "N" (3)** |

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her application for a period of disability and disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

## I.    BACKGROUND

Plaintiff is a 50-year old woman with a high school education. (Adm. Rec. at 56, 116). In the past, plaintiff has worked as a manger-dispatcher for a towing company and as a debt agent. (*Id.* at 116). Plaintiff allegedly suffers from several impairments, including methicillin-resistant

Staphylococcus aureus ("MRSA"),[1] chronic obstructive pulmonary disease ("COPD"), pain radiating from her hip to knees, a permanent limp and depression. Plaintiff uses a walker to ambulate.

Plaintiff was treated at East Jefferson General Hospital from March 3, 2003 through March 7, 2003. (*See id.* at 234 *et seq.*). She presented to the emergency room with progressive right thigh pain and redness and reported that she had a hematoma in her thigh for over 20 years secondary to a motor vehicle accident. (*Id.* at 236, 241). She had developed pain and swelling one week earlier that had become severe and was worse with movement. (*Id.* at 241). Plaintiff reported that she had been exposed to MRSA, from which her husband had suffered. (*Id.*). During the examination, plaintiff was anxious. (*Id.*). The physician reported her as obese and noted that there was a large, eight- to nine-centimeter indurated area on her right thigh with erythema extending down the dorsal lateral aspect of the thigh. (*Id.*). Plaintiff was diagnosed with abscess and hematoma to the right thigh with cellulitis. (*Id.* at 242). The physician also suspected MRSA. (*Id.*) Her husband had recently completed therapy for MRSA infected sacral decubitus. (*Id.*). After drainage, plaintiff's abscess remained very painful. (*Id.* at 247).

On May 13 and June 24, 2003, plaintiff was treated at Physicians Best Care Clinic. (*Id.* at 188, 190). The reports note that she had extreme anxiety and a huge abscess on her right thigh growing pseudomonas. (*Id.* at 190). She was diagnosed with depression, weakness and sleepiness. (*Id.* at 188). The physician prescribed her several medications. (*Id.*).

---

[1] MRSA is a strain of staph infection that is resistant to the broad-spectrum antibiotics commonly used to treat such infections. MRSA can be fatal.

On July 1, 2005, plaintiff completed a Function Report-Adult for the Social Security Administration. (*Id.* at 96-103). Plaintiff reported that she remained in pain between waking up and going to bed. (*Id.* at 96). Plaintiff reported that she no longer cooks, cleans, performs yard work or shops. (*Id.* at 99-100). Plaintiff also noted that she uses both a walker and a cane to ambulate, prescribed by a Dr. Sassard and a Dr. Blasini. (*Id.* at 102).

On July 25, 2005, Dr. Russell Ribando examined plaintiff. Dr. Ribando's notes indicate that plaintiff had severe problems with her right hip and resistant infections in July 2003. (*Id.* at 341). On August 9, 2005, Dr. Steven McPherson examined plaintiff at Nolacare Medical Group - West Bank. (*Id.* at 204-07). Dr. McPherson's notes indicate that plaintiff had had an abscess on her right lateral thigh that was incised and drained in February 2003, which required a seven-day stay in the hospital with IV antibiotics. (*Id.* at 204). He also noted that plaintiff had quit her job as a dispatcher after the hospitalization. (*Id.*). During the examination, plaintiff complained of spasms in her right thigh and claimed that her right knee would lock up and go out on her occasionally. (*Id.*). Plaintiff claimed that even with difficulty she did not sweep, mop, vacuum or climb stairs. (*Id.*). She claimed that she could only walk five feet and lift three to five pounds. (*Id.*).

Dr. McPherson noted that plaintiff sat for a period greater than five minutes without any obvious pain. (*Id.*). He also noted that she got on and off the exam table and up and out of a chair with minimal difficulty. (*Id.*). He also reported that plaintiff had excellent motor strength, did not complain of back pain and her straight leg raise was negative. (*Id.*). Plaintiff was able to walk on her right toe but unable to walk on her left toe despite the complaints of pain in her right knee and leg. (*Id.*). Dr. McPherson ultimately concluded that plaintiff was "greatly exaggerating" her right

leg and knee pain, which rendered it difficult to accurately assess her. (*Id.* at 207). Dr. McPherson stated: "I do not believe that the patient's ability to sit, stand, walk or lift objects is significantly impaired." (*Id.*).

On August 25, 2005, Charlotte Ducote, Ph.D., completed a Psychiatric Review Technique of plaintiff. While plaintiff claimed that she could not concentrate or comprehend, Ducote noted that she had "never been treated for depression by a psych nor admitted." (*Id.* at 230). Ducote also noted that while plaintiff's primary doctor had given her something to help her cope during the difficult time that she had with her leg injury, plaintiff no longer took the medication that her doctor had prescribed and was "able to perform adequate ADL's." (*Id.*).[2]

Dr. Ribando reported that plaintiff had suffered an asthma attack on December 5, 2005. (*Id.* at 341). Later, he noted that plaintiff reported that she had pain in her right hip and buttocks that radiated to her right knee. (*Id.*). Plaintiff stated that she could not walk with the pain. (*Id.*). Dr. Ribando diagnosed plaintiff with Anxiety, Neurosis and Bipolar Disorder on February 6, 2006. (*Id.*). On June 5, 2006, he diagnosed her with COPD and sciatica. (*Id.*). In November 2006, Dr. Ribando noted that plaintiff's COPD had worsened, she was unable to walk, had shortness of breath, a lump in her right thigh and had Bipolar Syndrome. (*Id.*). He advised plaintiff not to return to work and to apply for Social Security Disability. (*Id.*).

On November 28, 2006, plaintiff was taking 16 medications and three vitamins per day. (*Id.* at 113). On March 2, 2007, Scuddy Fontenelle, III, Ph.D., performed a consultative Psychological

---

[2]       While it is not entirely clear from the record or the parties' memoranda, it appears that the abbreviation "ADL" refers to "Activities of Daily Living."

Evaluation. (*Id.* at 355-58). Plaintiff reported to Fontenelle that she was afraid of driving and experienced panic when riding in a vehicle. (*Id.* at 355). She also reported that she was depressed, had experienced mood swings and feelings of agitation, anger and suicidal thoughts. (*Id.*). Plaintiff noted that her husband had had a stroke, become disabled and had developed MRSA, which she had contracted in caring for him. (*Id.* at 356). She had attended therapy sessions twice a month at the Family Service of Greater New Orleans. (*Id.*). Plaintiff claimed to have sores on her body and in her mouth and claimed to have lost teeth. (*Id.*). She alleged to be unable to walk far distances and had pain in her leg and feet. (*Id.*). She reported constant pain. (*Id.*). She claimed multiple mental health symptoms including loss of interest in pleasure, mood swings and feelings of agitation and frustration. (*Id.*).

During Fontenelle's examination, plaintiff noted that little things aggravated her, that she had to remove her shoes because her feet hurt, that she always though about ending her life and that she couldn't deal with life after Hurricane Katrina and the death of her son in December 2006. (*Id.*). She claimed to sleep only two to three hours a night and sometimes napped during the day. (*Id.*). She reported a varied appetite, that she ate when anxious and had recently gained weight. (*Id.*).

Fontenelle administered the Minnesota Multiple Phasic Personality Inventory - II to assess plaintiff's personality and emotional characteristics. The test revealed significant elevation on the F-Scale, which revealed substantial stress, tension and feelings of being overwhelmed with day-to-day life. (*Id.*). On the Clinical Scale, plaintiff demonstrated elevation in Scale 2 (depression), Scale 7 (Psychasthenia), Scale 1 (Hypochondriasis), Scale 0 (Social Introversion) and Scale 9 (Hypomania). (*Id.*).

Fontenelle indicated that plaintiff can feel easily overwhelmed with stressors in life and tends to feel unhappy, depressed, tense and anxious. (*Id.* at 357). Fontenelle noted that plaintiff's emotional problems and conflicted feelings could be due to physical and health care conditions. (*Id.*). He noted that she avoids social interactions and stays to herself. (*Id.*). She typically interacts only with those in her family unit. (*Id.*).

Fontenelle also administered the Vineland Adaptive Behavior Scales ("VABS"). The VABS results indicated that plaintiff is low average in communication, borderline in daily living skills and has a mild deficit in socialization. (*Id.*). Plaintiff admitted that she is difficult to get along with because she frequently feels angry and frustrated. (*Id.*). Plaintiff reported that she has constant pain in her leg, walks with a noticeable limp and can only walk approximately ten feet before she needs to stop, rest and relieve the pain in her leg. (*Id.*).

Fontenelle reported that plaintiff is short and stout, appeared stressed during the interview, has a hacking cough, spoke rapidly, quickly and in a loud tone of voice. (*Id.*). Her speech was adequate for purposes of communication. (*Id.*). Plaintiff stated that people talking "somewhere in the this [sic] office" were getting on her nerves. (*Id.*). Fontenelle noted that she became agitated with the routine activities in the office such as waiting in the room, dealing with others, talking with clerical staff and listening to routine office chatter. (*Id.*). Plaintiff focused constantly – and had a tendency to obsess – on her health issues, particularly the MRSA, calling it a "flesh eating disease." (*Id.*).

Fontenelle reported that plaintiff's mood was depressed, and her affect was anxious and tense. (*Id.* at 358). Fontenelle also noted that plaintiff is prone to frustration and can be demanding,

challenging and shows a difficult personality. (*Id.*). She may frequently complain, make negative comments and has a negative pattern of thinking. (*Id.*). She expressed a lack of interest in regular daily life and demonstrated symptoms of anhedonia. (*Id.*). She admitted having suicidal thoughts but no active plan. (*Id.*). Plaintiff admitted that she spends most of her time at home, isolates herself from others and does not enjoy going out socially. (*Id.*). She can be difficult and frequently argumentative. (*Id.*). She admitted that people frequently bother her, get on her nerves and very minor circumstances can trigger an emotional outburst. (*Id.*). She reported frequent sweats, chills and panic symptoms. (*Id.*). Plaintiff reported that she can feel easily overwhelmed by minor or typical circumstances that take place in her day-to-day life. (*Id.*). Fontenelle ultimately diagnosed her with Major Depression Disorder, Pain Disorder with both physical and psychological conditions, moderate to severe stressors and a current GAF of 55. (*Id.*)

Fontenelle also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (*Id.* at 359-61). He found that plaintiff's Depression with Chronic Pain Condition would cause a slight limitation to "understand and remember detailed instructions" and a moderate limitation to "carry out detailed instructions" and "the ability to make judgments on simple work-related decisions." (*Id.* at 359). He found no limitation to "understand and remember short, simple instructions" and to "carry out short, simple instructions." (*Id.*).

Fontenelle also found that plaintiff's Major Depression with mood swings and difficulty dealing with stressors cause a moderate limitation to "interact appropriately with the public," "interact appropriately with supervisors," "interact appropriately with co-workers," "respond appropriately to work pressures in a usual work setting," and "respond appropriately to changes in

a routine work setting." (*Id.* at 360).  He also concluded that plaintiff can manage benefits in her own interest.  (*Id.* at 361).

On March 30, 2007, Dr. Miljana Mandich issued his report after examining plaintiff.  (*Id.* at 362-75).  Dr. Mandich noted that plaintiff was markedly obese.  (*Id.* at 362).  Plaintiff reported occasional headaches relieved by Motrin.  (*Id.* at 363).  She reported sleeping well with her medication but is still sometimes nervous and depressed.  (*Id.*).  Plaintiff stated that Ativan controlled her panic attacks.  (*Id.*).  She denied frequent headaches, frequent fatigue and nervousness.  (*Id.*).  There were no problems with speech or memory, she reported no psychiatric illnesses and denied suicidal thoughts and hallucinations.  (*Id.*).  Dr. Mandich noted that plaintiff suffers from a lot of aches and pains that were very generalized.  (*Id.* at 364).  Dr. Mandich also noted that although plaintiff brought a cane with her, she apparently only used it after her hospitalization and did not need it now. (*Id.*).

Dr. Mandich ultimately concluded that plaintiff (1) can occasionally lift/carry twenty-five pounds; (2) can frequently lift/carry two pounds; (3) can stand/walk at least two hours in an eight-hour day; and (4) and is limited in pushing/pulling in her upper and lower extremities.  (*Id.* at 372-73).  Dr. Mandich found that sitting is not affected by her impairment.  (*Id.* at 373).  Dr. Mandich also found that plaintiff has no postural nor manipulative limitations.  (*Id.* at 373-74).  Dr. Mandich concluded that plaintiff has environmental limitations due to her obesity and COPD, requiring that plaintiff avoid temperature extremes, dust, hazards, fumes, odors, chemicals and gases.  (*Id.* at 375).

On July 16, 2007, Staci Lanza, a clinical social worker at the Family Service of Greater New Orleans, wrote that plaintiff had been under her care since August 2006, undergoing therapy due to

major depression, frequent panic attacks and the lack of ability to perform activities of daily living. (*Id.* at 376). Plaintiff informed Lanza that her presenting issues were due to her chronic illnesses, major depression, MRSA and COPD. (*Id.*). Lanza opined: "It has been discussed and shown in therapy that Beverly is not able to work due to her illnesses." (*Id.*).

On July 24, 2007, Lanza treated plaintiff, noting that plaintiff was having family trouble and needed refills for her antidepressants. (*Id.* at 385). On August 20, 2007, Lanza noted that plaintiff had shown up August 14, 2007, thinking she had an appointment. (*Id.* at 384). On August 28, 2007, plaintiff presented for her appointment with Lanza accompanied by Amy Wilson, a licensed clinical social worker. The three discussed plaintiff's potential participation in a drug study to obtain medication. (*Id.*). Lanza noted that plaintiff was frustrated with the struggle she was having in trying to get a psychiatrist. (*Id.*).

On September 4, 2007, Wilson treated plaintiff at the Common Ground Health Clinic ("CGHC"). Plaintiff reported family problems, felt as if she needed medication for her nerves, hadn't found a psychiatrist, was worried about pain and swelling in her left hand, back and arm, and was exhausted. (*Id.* at 378). Plaintiff reported some manic-sounding behavior and stated that she is depressed all of the time. (*Id.*). She reported great difficulty coping with her husband's disability after he had suffered an aneurysm. (*Id.*).

Wilson again treated plaintiff on September 12, 2007. Plaintiff looked very fatigued and complained that she was tired. (*Id.* at 378). She reported that she had spent the entire previous day at the Jefferson Parish Human Services Authority and had scheduled an appointment with a psychiatrist in six weeks. (*Id.*). Plaintiff was not ready to grieve for her son. (*Id.*). Her MRSA was

stable on that date.  (*Id.* at 380).  Earlier, on August 20, 2007, she had complained of hopelessness, sadness, low energy, poor sleep but good appetite.  (*Id.* at 382).  On that date, she had been diagnosed with COPD, depression and tooth infection.  (*Id.*).

On September 17, 2007, Wilson again treated plaintiff at the CGHC.  (*Id.* at 378).  Wilson reported that plaintiff appeared pale, and it looked as if she had lost a few pounds.  (*Id.*).  Her affect was downcast and flat.  (*Id.*).  Plaintiff reported that she felt like she was doing better than a few weeks earlier when she had begun her treatment at the CGHC.  (*Id.*).  She was sleeping poorly at night, waking at 3:30 a.m.  (*Id.*).

On September 26, 2007,Wilson reported that plaintiff looked fatigued.  (*Id.* at 377).  Plaintiff reported that she had not left her house since her last appointment nine days earlier.  (*Id.*).  Plaintiff stated that she felt overwhelmed, had no energy and was sad and sluggish.  (*Id.*).  Plaintiff reported that during the past nine days, she had had little interest in eating, overate when she did eat, did not get out of bed all day, did not prepare food and had little interest in dressing, grooming and bathing.  (*Id.*).  Wilson noted that plaintiff looked exhausted and spoke in low tones.  (*Id.*).  Plaintiff stated that she felt that her visits to the clinic were helping but that she was barely functioning.  (*Id.*).  Plaintiff reported that she felt that her medication, which she took daily, had provided only minimal improvement during the past month.  (*Id.*).  Wilson noted that plaintiff was depressed and anxious.  (*Id.*).

At the October 3, 2007 Social Security hearing, Wilson testified that she was concerned for plaintiff and that plaintiff could "rather quickly, at any point become at risk of taking her own life." (*Id.* at 428).  Wilson testified that other than plaintiff's medical appointments, she did not have much

of a life and took no pleasure from anything.  (*Id.*).  Wilson testified that plaintiff becomes easily depressed by tasks such as organizing notes or papers and making appointments, that she cries, frets and sometimes stays in bed for almost entire days.  (*Id.* at 429).  Wilson ultimately testified that these conditions and symptoms would interefere with plaintiff's ability to maintain a job.  (*Id.*).

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley*

11

*v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant, such as the plaintiff, is considered disabled only if her physical or mental impairment is so severe that she is unable to do not only her previous work, but cannot, considering her age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and

determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988

(1995). The regulations include a five-step evaluation process for determining whether an

impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520,

416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step

procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any
> substantial gainful activity by reason of any medically determinable physical or
> mental impairment which can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less than 12 months." To
> determine whether a claimant is disabled, and thus entitled to disability benefits, a
> five-step analysis is employed. First, the claimant must not be presently working at
> any substantial gainful activity. Second, the claimant must have an impairment or
> combination of impairments that are severe. An impairment or combination of
> impairments is "severe" if it "significantly limits [a claimant's] physical or mental
> ability to do basic work activities." Third, the claimant's impairment must meet or
> equal an impairment listed in the appendix to the regulations. Fourth, the impairment
> must prevent the claimant from returning to his past relevant work. Fifth, the
> impairment must prevent the claimant from doing any relevant work, considering the
> claimant's residual functional capacity, age, education and past work experience. At
> steps one through four, the burden of proof rests upon the claimant to show he is
> disabled. If the claimant acquits this responsibility, at step five the burden shifts to
> the Commissioner to show that there is other gainful employment the claimant is
> capable of performing in spite of his existing impairments. If the Commissioner
> meets this burden, the claimant must then prove he in fact cannot perform the
> alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ

determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish

that the claimant has a "residual functional capacity," given the claimant's age, education, and past

work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67

F.3d 558, 564 n.11 (5th Cir. 1995).  Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination.  *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  *Id*.

## IV.    ISSUES ON APPEAL

There are two issues on appeal that this Court will address in turn:

(1)    Whether the ALJ failed to consider plaintiff's obesity as required by Social Security Ruling ("SSR") 02-01p.

(2)    Whether the ALJ failed to accord weight to the opinions of the social workers who treated plaintiff as required by SSR 06-03p.

## V.  ANALYSIS

### 1.    Whether the ALJ failed to consider plaintiff's obesity as required by Social Security Ruling ("SSR") 02-01p.

Plaintiff first argues that the ALJ erred when he failed to consider her obesity.  A review of the record, however, reveals that plaintiff never alleged that her obesity, in combination with a mental impairment, rendered her disabled.  Specifically, her disability application does not mention her obesity as a disabling impairment, and plaintiff never once raised her obesity as a disabling impairment at any of the three hearings that the ALJ conducted on her application.  (Adm. Rec. at 78-87, 388-438).  Accordingly, plaintiff waived this claim from being raised on appeal.  *Anderson*

*v. Barnhart*, 344 F.3d 809, 845 (8th Cir. 2003) (holding that plaintiff waived claim when he never alleged any limitation in function as a result of his obesity in his disability application or at the administrative hearing).

Even were the Court to address plaintiff's claim on the merits, however, the Court notes that the ALJ considered plaintiff's obesity. The ALJ noted that Dr. Mandich, in assessing plaintiff's functional limitations, recommended that "[a]ll postural maneuvers were to be avoided and exposure to temperature extremes, vibration, dust and fumes, odor, chemicals and gases was limited due to COPD and obesity." (Adm. Rec. at 19). In his residual functional capacity assessment ("RFC"), the ALJ specifically noted that plaintiff "should not work in environments involving regular exposure to dust, fumes or gases due to the likelihood that such exposure would exacerbate symptoms of COPD." (*Id.* at 17). While the RFC does not mention obesity explicitly, this Court's review of the administrative record reveals that the ALJ considered Dr. Mandich's recommendations in rendering his RFC.

As the Commissioner correctly notes, a mere diagnosis of obesity does not establish a severe impairment or the existence of a functional limitation. SSR 02-1p, *Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049, at *6 (Sept. 12, 2002).[3] When obesity is *appropriately* raised, the ALJ must determine whether obesity is a severe impairment when, alone or in combination with another medically determinable impairment, it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The ALJ can not make assumptions about the severity

---

[3] The Fifth Circuit has noted that while they are not binding, SSRs "may be consulted when the statute at issue provides little guidance," and that the court itself has "frequently relied upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

or functional effects of obesity combined with other impairments. SSR 02-1p at *6. It is well established that the burden to demonstrate the existence of a disability lies with plaintiff. *Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981). Because plaintiff failed to argue that she experienced any limitations as a result of her obesity, the ALJ did not err when he only recognized that she was diagnosed as obese in his opinion. The Court notes that the ALJ could have been more explicit on this point. His opinion reveals, however, that he recognized and considered plaintiff's obesity. He simply did not find – and this may be because plaintiff failed to argue the point – that the diagnosis of her obesity did not significantly limit her ability to perform basic work activities.

Under the rubric above, plaintiff also claims that the ALJ erred when he found that plaintiff's impairment or combination of impairments did not meet or medically equal a listing for presumptive disability. Specifically, plaintiff argues that the ALJ erred because his evaluation of Listing 12.04 for Affective Disorders focused only on whether plaintiff had two marked limitations and failed to discuss her obesity. (Adm. Rec. at 15-17). In his final opinion, the ALJ ultimately concluded that plaintiff failed to meet the criteria of either "B" or "C" in Listing 12.04. (*Id.*).

Under Listing 12.04, plaintiff must meet both the "A" and "B" criteria or the "C" criteria. Plaintiff appears to argue that had the ALJ conducted a proper analysis and had he accorded greater weight to the medical opinion of Dr. Fontenelle, the ALJ would have found that plaintiff's impairments, coupled with her obesity, would satisfy Listing 12.04. The ALJ exhaustively analyzed the opinions of Drs. Fontenelle and Mandich and ultimately found that the evidence *in toto* did not support the finding that plaintiff met Listing 12.04. (*Id.*). A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey*,

230 F.3d at 135. As noted above, conflicts in the evidence are for the Commissioner to resolve, not the courts, *Carey,* 230 F.3d at 135, and any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. The ALJ explicitly compared Dr. Fontenelle's findings to the criteria in "B" and "C" of Listing 12.04. The Court can not second-guess the ALJ's ultimate conclusion that plaintiff failed to meet the criteria of "B" or "C" in Listing 12.04. Substantial evidence supports the ALJ's conclusion, and this Court may not re-weigh the evidence.

The Court also notes that plaintiff has failed to demonstrate how her mental impairments in combination with her obesity would satisfy Listing 12.04. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). It is not the duty of this Court to craft plaintiff's argument for her or to comb the record to find evidence that supports her claims. *S.E.C. v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992). Specifically, plaintiff fails to point to specific evidence in the record that would support her claim that her mental impairments combined with her obesity would satisfy the criteria in Listing 12.04. The criteria in "A," "B" and "C" in Listing 12.04 are extremely detailed criteria, and it is not this Court's duty to comb the record to find evidence to support plaintiff's allegations.

Plaintiff also appears to challenge the ALJ's determination of her credibility. It is well settled that the ALJ must consider subjective evidence of pain, but it is within the discretion of the ALJ to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991)

(citing *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) & *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983)). The ALJ's determination is entitled to considerable deference. *Id.* (citing *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986). "Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989)).

Social Security Ruling ("SSR") 96-7p, entitled "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," outlines the determination of a claimant's credibility. "[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled." SSR 96-7p, 1996 WL 374186, at *2. To evaluate an individual's credibility, the adjudicator must first determine whether the claimant has an impairment that could cause the alleged symptoms, and such impairment must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* Second, if the claimant's statements about "the intensity, persistence, or functionally limiting effects of pain or other symptoms" are not substantiated by objective medical evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* The Fifth Circuit has held that the ALJ need not give subjective evidence precedence over medical evidence but that "a resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain." *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988).

Plaintiff appears to challenge the ALJ's credibility determination when he concluded that

"there were significant differences in claimant's presentation during each respective consultative examination." (Adm. Rec. at 16). The ALJ ultimately concluded that the inconsistencies in the record during her numerous examinations undermined plaintiff's credibility. For example, the ALJ noted that plaintiff has continued to allege that the MRSA infection continues to attack her lungs and that she had had a recent breakout on her wrist. (*Id.* at 21). The findings of Dr. Mandich (that no MRSA infection had re-occurred since 2003) directly contradict plaintiff's allegations. (*Id.*). The ALJ also noted that Dr. McPherson documented that plaintiff "severely exaggerated" her limitations. (*Id.*). He further noted that plaintiff had received only conservative outpatient treatment and that this "is in disaccord with [plaintiff's] allegations that she has very severely limited daily activities." (*Id.*). The credibility determinations of the ALJ are entitled to great deference, and this Court finds that substantial evidence supports the ALJ's credibility determination here.

2. **Whether the ALJ failed to accord weight to the opinions of the social workers who treated plaintiff as required by SSR 06-03p.**

Plaintiff argues that the ALJ accorded zero weight to the opinions of the social workers, Lanza and Wilson. The Social Security Administration published Social Security Ruling 06-03p, *Titles II and XVI: Considering Opinions and Other Evidence From Sources Who are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) (hereafter "SSR 06-03p" or "the Ruling"). Acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Only "acceptable medical sources" can

provide evidence to establish the existence of a medically determinable impairment, *id.*, only they can provide medical opinions, 20 C.F.R. § 404.1527(a)(2), and only they can be considered treating sources, 20 C.F.R. § 1527(d).

The regulations, however, also contemplate the use of information from "other sources," both medical and non-medical. *See* 20 C.F.R. §§ 404.1502, 404.1513(d). In the category of other medical sources, the regulations include, but are not limited to, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d)(1). These sources, as well as the other non-medical sources, may provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. § 404.1513(d).

The agency promulgated SSR 06-03p to "clarify how [it] consider[s] opinions from sources who are not 'acceptable medical sources[.]' " SSR 06-03p at *1. Recognizing the growth of managed health care in recent years and the increasing use of medical sources who are not technically "acceptable medical sources," the Ruling states that "[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3.

The Ruling specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) and § 416.927(d) apply equally to "all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other [non-medical] sources.'" *Id.* at *4. Thus,

depending on the particular facts in a case, and after applying the factors for

weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* at *5.

The Ruling instructs the adjudicator to

explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

Despite plaintiff's protestations to the contrary, the Court finds that the ALJ appropriately considered the opinions of Lanza and Wilson and afforded them the appropriate weight. The ALJ carefully weighed the statements of Lanza and found that the overwhelming majority of the evidence contradicted her statements. (Adm. Rec. at 22). The ALJ found that Lanza had merely relied on plaintiff's "subjective statements" to render her opinions. (*Id.*). Lanza specifically admitted that the July 2007 letter "'was to aid client in getting Social Security.'" (*Id.*). The ALJ found that Lanza had no clear and objective basis on which to base the opinions that she set forth in the letter. (*Id.*). Additionally, the ALJ found that "[a]bsent from her comments are specific functional concerns that can be considered within the sequential evaluation process." (*Id.*). Moreover, the ALJ noted that Lanza's "overall remarks are contrary to the moderate limitations specifically identified by the consulting psychologist and the absence of consistent mental health care." (*Id.* at 23). The ALJ

noted that plaintiff had failed to present for 12 visits between January 2007 and April 2007, and that Lanza was prepared to close plaintiff's file. (*Id.* at 22). Six days prior to the hearing, however, plaintiff returned to Lanza, who then -- a week later -- provided plaintiff with the July 2007 letter. Indeed, Lanza's conclusory remark that plaintiff is disabled is a legal conclusion reserved to the ALJ and "never entitled to controlling weight or special significance." (*Id.*). The Court finds that the ALJ did not err here.

The ALJ also concluded that Wilson's testimony at the hearing -- her "conjectures" and "conclusory remarks" -- were not supported by the evidence in the record. (*Id.* at 23). He noted that Wilson had only met with plaintiff four times since September 2007. (*Id.*). Notwithstanding Wilson's testimonial fears, the ALJ noted that "[l]ongitudinally, the treatment approach ha[d] remained extremely conservative and that plaintiff had never required intensive, emergent or in-patient treatment." (*Id.*). He noted that plaintiff had no history of suicidal gestures or documented episodes of deterioration or decompensation. (*Id.*). And he noted that plaintiff maintained her weight, leading him to conclude that Wilson's fears that she would not eat regularly were unsupported by the evidence in the record. (*Id.*). Because Wilson is not a physician or a psychologist, the ALJ ultimately concluded that her opinions were not accorded substantial weight. He determined to afford greater weight to the findings of the consulting psychologist. (*Id.*). Based on the record before it, the Court can not say that this was error.

## VI. CONCLUSION

Plaintiff has failed to show that the ALJ's RFC assessment is not supported by substantial evidence, that he improperly disregarded her obesity -- a claim that plaintiff failed to appropriately

raise -- that he improperly analyzed her credibility or that he failed to afford the proper weight to the opinions of Lanza and Wilson. Substantial evidence supports the ALJ's finding that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the determination. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be dismissed with prejudice.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  8th  day of June, 2010.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**